IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 13-40065-01-DDC |
| JAVIER VEGA (01), | |
| Defendant. | |

### MEMORANDUM AND ORDER

Defendant Javier Vega has filed a pro se[1] Motion for Sentence Reduction Under 18 U.S.C § 3582(c)(1)(A) (Doc. 448). The government has responded (Doc. 450). For reasons explained below, the court denies Mr. Vega's motion.

**I.      Background**

On August 15, 2014, Mr. Vega entered a guilty plea under Fed. R. Crim. P. 11(c)(1)(C) to one count of conspiring to distribute 500 grams or more of methamphetamine, violating 21 U.S.C. § 846. *See* Doc. 156 (Plea Agreement). On December 15, 2014, the court accepted the 11(c)(1)(C) plea agreement and—bound by the agreement's terms—sentenced Mr. Vega to 216 months' imprisonment. *See* Doc. 227 at 2 (Judgment). This sentence was far below Mr. Vega's guidelines range of 292 to 365 months. *See* Doc. 228 at 3 (Statement of Reasons); *see also* Doc. 225 at 25 (Presentence Report ¶ 128). Mr. Vega's projected release date is August 28, 2028, about six years from now. *See* Javier Vega (Reg. No. 23231-031) (last visited June 6, 2022), https://www.bop.gov/inmateloc/.

---

[1]      People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**II.     Legal Standard**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [this] rule of finality is subject to a few narrow exceptions. One such exception is contained in [18 U.S.C.] § 3582(c)(1)." *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quotation cleaned up). Under this exception, the court may modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days[2] from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A); *see also Maumau*, 993 F.3d at 830–31 (reviewing § 3582(c)(1)'s history, text, and requirements). Recently, our Circuit held that the exhaustion requirement is a claim-processing rule that the government may waive or forfeit. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

After considering exhaustion, the court applies a three-step analysis to motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021). The court may grant a motion for reduction of sentence only if "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable." *Id.* Relief may "be granted only if all three prerequisites are satisfied," and, accordingly, "the three steps [can] be considered in any order." *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021).

---

[2]     Under § 3582(c)(1)(A), a defendant may file a motion for compassionate release directly with the district court after "the passage of 30 days from the defendant's *unanswered* request to the warden for such relief." *See Maumau*, 993 F.3d at 830 (emphasis added).

The Tenth Circuit doesn't view the first step—"extraordinary and compelling" reasons—as jurisdictional. *See id.* at 942 n.7 (declining "to read a jurisdictional element into § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication (much less a 'clear statement') to that effect").

The court need not address the second step of the analysis because the Sentencing Commission has not issued an "applicable policy statement" for defendant-filed compassionate release motions, like this one. *Maumau*, 993 F.3d at 837. So, unless "and until the Sentencing Commission issues such a policy statement, the second requirement does not apply." *United States v. Quinn*, No. CR 10-20129-03-KHV, 2021 WL 3129600, at *2 (D. Kan. July 23, 2021). The court applies the other principles to Mr. Vega's motion, below, in Part III.

**III.    Analysis**

First, the court considers whether Mr. Vega has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). On June 5, 2020, Ms. Adriana Barajas—Mr. Vega's fiancée—sent a letter to the warden at the United States Penitentiary (USP) Victorville, requesting compassionate release on Mr. Vega's behalf. Doc. 448-2 at 1–3. More than three months later, on September 11, 2020, the warden eventually denied the request. *Id.* at 4–6. While Mr. Vega didn't appeal that denial to the director of the Bureau of Prisons, the court concludes he didn't have to—because the warden didn't respond to Mr. Vega's request within 30 days. *See Maumau*, 993 F.3d at 830 (explaining that a defendant may file a motion for compassionate release directly with the district court after "the passage of 30 days from the defendant's *unanswered* request to the warden for such relief" (emphasis added)); *cf. United States v. Olsson*, No. 13-CR-2051 KWR, 2020 WL 6869979, at *1 (D.N.M. Nov. 23, 2020) (concluding that, "if the warden responds to a request within 30 days, defendant must fully

3

exhaust available administrative appeals before filing a motion in district court"). And, importantly, the government concedes that a "liberal reading" of Mr. Vega's request to the warden through Ms. Baraja "suggests that he has properly exhausted his available administrative remedies." Doc. 450 at 4. The court thus turns to the merits of Mr. Vega's motion.

### A.     Extraordinary and Compelling Reasons

Mr. Vega asserts that his physical and medical conditions present extraordinary and compelling reasons justifying compassionate release. Doc. 448 at 4. Mr. Vega asserts that he has type 2 diabetes, high blood pressure, and an open wound on his lower leg that he reports hasn't healed in six years. *Id.* at 5. The government further notes that Mr. Vega has high cholesterol, nerve damage in a lower limb, and peripheral vascular angioplasty. *See* Doc. 450 at 7. Also, a "chronic infection"—apparently in Mr. Vega's leg—has required two separate hospitalizations, one in 2017 for 10 days, and another in 2021. Doc. 448 at 5. And finally, a blood clot has developed recently in his infected leg. *Id.*

In response, the government contends that all Mr. Vega's conditions are controlled by prescribed medications or appropriate medical care. *See* Doc. 450 at 7–8. The court has no reason to believe that isn't so. And, in any event, the court concludes that Mr. Vega's cited medical conditions aren't extraordinary and compelling reasons justifying compassionate release. Our Circuit has noted several other circuits' holdings that certain risk-factors like high blood pressure, and type 2 diabetes "are 'too commonplace' to constitute extraordinary and compelling reasons" on their own. *United States v. Avalos*, 856 F. App'x 199, 205 n.4 (10th Cir. 2021) (quoting *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) and collecting cases). Mindful of that weight of authority, the court agrees that Mr. Vega's cited medical conditions, on their own, don't present extraordinary and compelling reasons.

4

To be sure, the CDC recognizes that certain medical conditions—like type 2 diabetes and high blood pressure—can increase a person's risk for severe complications from COVID-19. *See People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022). Mr. Vega doesn't argue that his medical conditions increase his risk of severe complications from COVID-19. But even if he did, the government notes that Mr. Vega received his second dose of the Moderna vaccine against COVID-19 in February 2021. Doc. 450 at 8. Our Circuit recently held (albeit in an unpublished opinion) that "'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" *United States v. McRae*, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (quoting *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021)); *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release").[3]

Finally, Mr. Vega's leg condition, while a bit unclear, also isn't extraordinary and compelling. The government contends that Mr. Vega is receiving "the necessary medical care" to address the "issues impacting his lower leg." Doc. 450 at 8. Mr. Vega doesn't suggest that

---

[3] It appears that several district courts in our Circuit—including our court—have adhered to this recent direction from the Circuit. Following *McRae*, those courts have concluded that when a defendant has had access to the COVID-19 vaccine, incarceration during the pandemic doesn't suffice, on its own, as an extraordinary and compelling reason for a sentence reduction. *See United States v. Smith*, No. 2:13-cr-00776, 2022 WL 1422197, at *6 (D. Utah May 5, 2022); *United States v. Garcia-Patino*, No. 17-20038-18-DDC, 2022 WL 1223642, at *2–3 (D. Kan. Apr. 26, 2022); *United States v. Logan*, No. 07-20090-01-KHV, 2022 WL 1102654, at *3 (D. Kan. Apr. 13, 2022); *United States v. Oaks*, No. 18-CR-00470-PAB-11, 2022 WL 1081148, at *2 (D. Colo. Apr. 11, 2022); *United States v. Duran*, No. 1:15-CR-27 TS, 2022 WL 844433, at *1 n.3 (D. Utah Mar. 22, 2022).

this treatment is inadequate. The court thus finds that Mr. Vega hasn't presented any extraordinary and compelling reasons justifying compassionate release.

**B.      Sentencing Factors in § 3553(a)**

Even if Mr. Vega had presented extraordinary and compelling reasons for compassionate release, his motion fails for a separate, and independent reason: the § 3553(a) sentencing factors do not favor his release. The court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors include: (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a).

The court recognizes that, since Mr. Vega began his sentence, he has earned a GED, completed an electrician apprenticeship, worked as an electrician at USP Victorville, completed many educational courses, and has no noted disciplinary history. *See* Doc. 448-1. Mr. Vega also has a release plan, including a place to live, a planned job, and plans to marry his fiancée. *See* Doc. 448-3. The court certainly commends Mr. Vega for his efforts and accomplishments. They are notable and, the court hopes, help him establish a law-abiding lifestyle on release. Mr. Vega also has provided several letters from family and friends vouching for his character. The court has reviewed these letters thoroughly and recognizes Mr. Vega's positive influence on the lives of those closest to him.[4]

---

[4]      The court directed the Clerk's office not to docket these letters on CM/ECF for privacy reasons. The letters include physical home addresses of members of the public and names of minors.

But, the § 3553(a) sentencing factors haven't shifted enough to justify a sentence reduction. Mr. Vega committed a serious felony offense. He pleaded guilty to one count of conspiracy to distribute 500 grams or more of methamphetamine. Doc. 156 at 1. The Presentence Report attributes 1.85963 kilograms of actual methamphetamine to Mr. Vega. Doc. 225 at 7 (PSR ¶ 28). Mr. Vega was an organizer and leader of the conspiracy to distribute. *Id.* at 13 (PSR ¶ 66). And, at the time he committed this drug offense, he had a criminal history score of 20, establishing a criminal history qualifying for the highest category recognized by the Guidelines—category VI. *Id.* at 21 (PSR ¶¶ 92–94). Indeed, if the categories continued above Category VI at the same rate, Mr. Vega would qualify as a Category VIII. Notably, the Presentence Report recommended a guidelines range of 292 to 365 months' imprisonment. *Id.* at 25 (PSR ¶ 128). But the government and Mr. Vega bargained and agreed—as the court accepted—a binding Rule 11(c)(1)(C) agreement to a 216-month sentence. *See* Doc. 227 at 2 (Judgment). This sentence was significantly below the guidelines range. Reducing that sentence by six more years, as Mr. Vega now requests, would not reflect the seriousness of his offense, nor promote respect for our laws. Thus, despite Mr. Vega's commendable rehabilitative efforts, the § 3553(a) factors do not support early release.

## IV.   Conclusion

The court denies Mr. Vega's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 448) for two independent reasons: (1) he fails to present any extraordinary and compelling reasons for release; and (2) the § 3553(a) factors do not favor release.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Vega's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 448) is denied.

**IT IS SO ORDERED.**

**Dated this 7th day of June, 2022, at Kansas City, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**